UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KRYSTAL COEHLO and MICHAEL FINEMAN,

       Plaintiffs,

v.

WELLS FARGO BANK, N.A. dba Wells Fargo Dealer Services,

       Defendant.

_____/

Case No.: 2:17-cv-_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW Plaintiffs, KRYSTAL COEHLO ("Ms. Coehlo") and MICHAEL FINEMAN ("Mr. Fineman") (hereinafter collectively referred to as "Plaintiffs"), by and through the undersigned counsel, and hereby sue the Defendant, WELLS FARGO BANK, N.A. ("Wells Fargo" or "Defendant") for damages and allege in support thereof:

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendant state law claims.

2. This action arises out of Wells Fargo's violations of (1) the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, *et seq.* and (2) the Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. § 227, in its illegal efforts to collect a consumer debt from Plaintiffs.

3. Venue is proper in this District because the acts and transactions occurred here and Wells Fargo transacts business here.

1

## PARTIES

4. Ms. Coehlo is a natural person who resides in Lee County, Florida.

5. Mr. Fineman is a natural person who resides in Charlotte County, Florida. Mr. Fineman is Ms. Coehlo's step-father.

6. Wells Fargo is a national banking association operating from an address of 101 North Phillips Avenue, Sioux Falls, South Dakota 57104, and is a "person" under the law. Wells Fargo does business as Wells Fargo Dealer Services.

## FACTUAL ALLEGATIONS

### *Background*

7. On December 8, 2014, Ms. Coehlo obtained a loan from CarMax Auto Superstores, Inc. to purchase a vehicle for her personal use (hereinafter referred to as the "Debt"). Mr. Fineman co-signed the loan as guarantor, and as such is also obligated on the Debt.

8. Sometime thereafter, the Debt was assigned or otherwise transferred to Wells Fargo.

9. The Debt called for regular monthly payments in the amount of $507.80.

10. Due to unemployment and resulting loss of income in the first half of 2017, Ms. Coehlo became delinquent on her payment obligations on the Debt and Wells Fargo began threatening to repossess the vehicle.

### *The Payment*

11. On June 27, 2017, to prevent repossession, Ms. Coehlo received assistance from family to bring the Debt current, and made the payment required to do so via Wells Fargo's pay-by-phone payment option (the "Payment Call"). Ms. Coehlo, a representative for Wells Fargo, and Ms. Coehlo's step-uncle were all on the telephone line during the Payment Call.

12. During the Payment Call, Ms. Coehlo and her step-uncle inquired as to the amount required to bring the Debt current, along with the basis for the amount.

13. The Wells Fargo representative on the Payment Call advised that the total to bring the Debt current as of the date of the call was $2,132.76, which included $101.56 in late fees.

14. Ms. Coehlo and her step-uncle inquired as to whether the late fees could be waived, and were advised that the representative could not waive them himself, and that such a waiver would need to come from a manager after the payments were brought current. However, he further advised that the late fees were *not* required to bring the Debt current, and that they would simply be recovered at the end of the loan if not later waived by a manager. Therefore, he advised Ms. Coehlo and her step-uncle that *they only needed to pay the total of $2,031.20 to bring the Debt current* and could deal with the late fees at a later date, after having the opportunity to discuss them with a manager.

15. Ms. Coehlo's step-uncle asked several questions to confirm that no part of the payment being made would go towards the late fees, and that such arrangement would be acceptable to Wells Fargo to bring the Debt current. Ms. Coehlo's step-uncle went so far as to state that, if it would be an issue not to pay the late fees, then they would gladly pay such during the Payment Call, but would like to retain the opportunity to discuss with a Wells Fargo manager regarding whether such fees could be waived.

16. At each instance, the Wells Fargo representative unequivocally stated that there was no issue in not paying the late fees at that time, *as they were not required to bring the Debt officially current*.

17. Given that the date of the Payment Call was near the end of June, Ms. Coehlo's step-uncle further requested that the July payment be added to their payment amount in order to take care of the upcoming month as well.

18. After adding the July payment to the balance required to bring the Debt current, payment in the amount of $2,031.20 was made by phone on the Payment Call.

### *Well Fargo's Violations of Law*

19. Subsequently, within a month of the Payment Call, Ms. Coehlo began receiving collection calls from Wells Fargo advising that she was allegedly still in arrears on the Debt.

20. During the collections calls, Ms. Coehlo advised that the Debt should be current due to the payment made on the Payment Call.

21. During the collection calls, Wells Fargo advised Ms. Coehlo that she was not current on the Debt, and that the amount paid during the Payment Call did not cover the July payment after applying it to the balance owed, *including late fees*.

22. Ms. Coehlo realized that Wells Fargo did not apply the payment as agreed, represented, and confirmed on the Payment Call, and instead applied $101.56 of the payment amount to the late fees.

23. Ms. Coehlo advised each of the Wells Fargo collection callers of Wells Fargo's mistaken application of the payment to the late fees, but was nevertheless advised by each representative that she still owed the July payment and needed to make such payment immediately.

24. Wells Fargo continued calling Ms. Coehlo, and also began calling Mr. Fineman, claiming that the Debt was not current and attempting to collect same.

25. The Plaintiffs retained the services of undersigned counsel, and a letter informing Wells Fargo of the Plaintiffs' representation (the "Written Notice") was sent to Wells Fargo via certified mail. Wells Fargo received the Written Notice on August 3, 2017. *See* **Exhibit "A"** attached hereto.

26. Additionally, Wells Fargo received *repeated* verbal notice of representation by Ms. Coehlo on each call placed to her by Wells Fargo thereafter.

27. Despite having received the Written Notice, on August 11, 2017, Wells Fargo sent a billing statement directly to Ms. Coehlo claiming that she owed $1,127.32 on the Debt, which consisted of a $609.36 past due balance, $10.16 in accrued late charges, and an August payment in the amount of $507.80. *See* **Exhibit "B"** attached hereto.

28. Wells Fargo has continued to send communications directly to Ms. Coehlo in an attempt to collect the Debt, despite having received the Written Notice. *See* **Composite Exhibit "C"** attached hereto.

29. Further, despite having received the Written Notice, Wells Fargo placed numerous telephone calls to both Plaintiffs seeking to collect the Debt. Wells Fargo left voice messages on August 4 and 7, 2017, after having undeniably received the Written Notice.

30. Upon information and belief, Wells Fargo employed the use of an automated telephone dialing system ("ATDS") to call both Plaintiffs' cellular telephone numbers. This belief is informed because Plaintiffs would hear nothing (silence) for the first moment upon answering a call or receiving a voicemail.

31. Neither Plaintiff provided any consent, written or otherwise, to being called via an ATDS on their cellular telephone. Further, any perceived consent was unquestionably revoked upon being informed of representation by counsel.

*Actual Damages*

32. Wells Fargo's improper application of the payment taken on the Payment Call has allowed it to accrue additional interest on the Debt (at a rate of 16.000%) to which it is not entitled, as the principal balance should have been reduced by the amount Wells Fargo intentionally and wrongfully applied to the late fees.

33. Plaintiffs have suffered additional damages in the form of stress, fear, anxiety, distraction, and other related emotional distress as a result of Wells Fargo's conduct.

## CLAIMS

### Count I
### Violation of The Florida Consumer Collection Practices Act
### Fla. Stat. § 559.72(9)
### *(Misapplication of Funds)*

34. Plaintiffs incorporate by reference 1 – 33 of the paragraphs above as though fully stated herein.

35. The foregoing acts and omissions of the Wells Fargo attempting to collect an alleged Debt from Plaintiffs constitutes a violation of the FCCPA.

36. Wells Fargo violated Fla. Stat. § 559.72(9) by asserting a legal right to certain payments after the Payment Call, which rights Wells Fargo knew did not exist at the time.

37. As a result of Wells Fargo's violations of the FCCPA, each Plaintiff is entitled to actual damages and statutory damages in an amount up to $1,000.00 and reasonable attorney's fees and costs from Wells Fargo pursuant to Fla. Stat. § 559.77.

38. Additionally, § 559.77 provides that a court may award punitive damages. Plaintiffs will seek to amend this claim to seek same if discovery shows punitive damages may be proper.

**Count II**
**Violation of The Florida Consumer Collection Practices Act**
**Fla. Stat. § 559.72(18)**
*(Communicating with Person Known to be Represented by Counsel)*

39. Plaintiffs incorporate by reference 1 – 33 of the paragraphs above as though fully stated herein.

40. The foregoing acts and omissions of the Wells Fargo attempting to collect an alleged Debt from Plaintiffs constitutes a violation of the FCCPA.

41. Wells Fargo violated Fla. Stat. § 559.72(18) by attempting to collect an alleged Debt from Plaintiffs after receiving the Written Notice and repeated verbal notice, which incontestably informed Wells Fargo that Plaintiffs were represented by counsel with respect to the Debt.

42. As a result of Wells Fargo's violations of the FCCPA, each Plaintiff is entitled to actual damages and statutory damages in an amount up to $1,000.00 and reasonable attorney's fees and costs from Wells Fargo pursuant to Fla. Stat. § 559.77.

43. Additionally, § 559.77 provides a court may award punitive damages. Plaintiffs will seek to amend this claim to seek same if discovery shows punitive damages may be proper.

**Count III**
**Violation of The Telephone Consumer Protection Act**
**42 U.S.C. § 227**
*(Use of an Automated Telephone Dialing System)*

44. Plaintiffs incorporate by reference 1 – 33 of the paragraphs above as though fully stated herein.

45. Wells Fargo use of an ATDS to Plaintiffs' cellular telephones constitute violations of the TCPA.

46. Under the provisions of 47 U.S.C. § 227(b)(1)(A)(iii), Wells Fargo was and is prohibited from using an ATDS to make any call to any telephone number assigned to a cellular telephone.

47. Neither Plaintiff had ever given Wells Fargo any type of consent to call their cellular telephones.

48. None of the phone calls placed by Wells Fargo to either Plaintiff's cellular telephone were made for emergency purposes.

49. Before such calls were placed, the Wells Fargo was aware of the prohibitions on making such calls pursuant to the TCPA.

50. As a direct result of Wells Fargo's violations of the TCPA, each Plaintiff is entitled to actual monetary loss *or* $500.00 in damages for each violation, and reasonable costs pursuant to 47 U.S.C. § 227 from Wells Fargo.

51. Additionally, 47 U.S.C. § 227 provides that a court may award treble statutory damages to Plaintiffs in the event that Wells Fargo's violations of the TCPA are shown to have been "willful and knowing." Plaintiffs submit that Wells Fargo's violations of the TCPA were both willful and knowing, and accordingly requests treble damages.

## JURY DEMAND

52. Plaintiffs are entitled to, and hereby respectfully demand, a trial by jury on all issues so triable. U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that judgment be entered against Wells Fargo:

- awarding damages pursuant to Fla. Stat. § 559.77 and 42 U.S.C. § 227(c)(5);
- awarding costs of litigation and reasonable attorney's fees pursuant to Fla. Stat. § 559.77;
- enjoining further abusive collection conduct pursuant to Fla. Stat. § 559.77 and 42 U.S.C. § 227(c)(5); and

- awarding such other relief as this Court deems just and proper.

Date: <u>October 3, 2017</u>   */s/ **Joseph C. LoTempio**         
Joseph C. LoTempio, Esq.
FBN: 0086097
jlotempio@dellutrilawgroup.com
THE DELLUTRI LAW GROUP, P.A.
1436 Royal Palm Square Blvd.
Fort Myers, FL 33919
239-939-0900
239-210-3685 – Dir.
239-939-0588 – Fax
www.DellutriLawGroup.com
***Trial Counsel***